CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 20 2007

JOHN F. CORCORAN, CLERK
BY:
　　　DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAMES MADISON MCCAULEY, ) | |
| 　　Plaintiff, ) | Civil Action No. 7:07-cv-00551 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| KATHLEEN J. BASSETT, WARDEN, ) | By: Hon. James C. Turk |
| 　　Defendant. ) | Senior United States District Judge |

　　Plaintiff James Madison McCauley, an inmate at Keen Mountain Correctional Center (KMCC) proceeding pro se, brings this action as a motion for "emergency directive and temporary restraining order." In his motion, McCauley alleges that on November 15, 2007, the defendant, who is warden of KMCC, is violating his constitutional rights by implementing a policy making the KMCC Protective Custody United (PCU) a "tobacco-free unit." Because McCauley alleges that the no-smoking policy violates his constitutional rights, the court also construed and filed his pleading as a civil rights complaint arising under the Civil Rights Act, 42 U.S.C. §1983, with jurisdiction vested under 28 U.S.C. §1343. Upon consideration of the complaint, the court finds that McCauley fails to demonstrate grounds for interlocutory injunctive relief, and his lawsuit must dismissed pursuant to 42 U.S.C. § 1997e(a) because McCauley failed to exhaust administrative remedies before filing this lawsuit.

I.

　　McCauley's allegations and submissions provide the following sequence of events on which his claims are based. McCauley is currently incarcerated in the PCU at KMCC. He asserts that he was born with a chemical addiction to nicotine and has smoked cigarettes for more than 46 years. On October 15, 2007, prison officials posted the following memo:

1

> In keeping with the non-smoking policies of other PC Units in Virginia, EFFECTIVE NOVEMBER 15, 2007, the Protective Custody Unit at [KMCC] will become a tobacco-free unit. Following November 15, if an inmate housed in the Protective Custody Unit is caught in possession of tobacco products or paraphernalia for the use of such products, he may be charged [with a disciplinary infraction].

The KMCC commissary offers for purchase patches designed to help people quit smoking, but McCauley states that he does not receive sufficient income to purchase these patches. He asserts, "It is a medically proven fact that some people can go into shock from withdrawals of nicotine properties, and some people have died as a result." He also complains that officers in the PCU will receive smoking cessation patches free of charge and that tobacco products will still be sold in other units at KMCC.

McCauley argues that enforcing the smoking ban against him without first allowing him to exhaust his administrative remedies violates his right to due process. He also argues that the ban is discriminatory, since KMCC inmates in other units will not be affected by it. Finally, he complains that the cessation patches are too expensive and that KMCC officials are not providing PCU inmates with "the needed Medical assistance to cure the addiction."

II

As an initial matter, the court notes that McCauley's request for interlocutory injunction to prevent implementation of the smoking ban against him on November 15, 2007, is moot, as the court did not receive his pleading until November 15, 2007. Moreover, because he has not demonstrated that he will suffer irreparable harm in the absence of court intervention, the court must deny his request for any form of interlocutory injunctive relief. See Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 360 (4th Cir. 1991) (finding that without showing plaintiff will suffer imminent, irreparable harm, court cannot grant interlocutory injunctive relief). McCauley alleges

no facts indicating that he has suffered, or will suffer, life-threatening side effects as a result of the smoking ban implemented at KMCC on November 15, 2007. At the most, he generalizes that some people who are addicted to nicotine, as he believes he is, suffer such symptoms when they stop smoking. Moreover, McCauley does not allege facts indicating that he has requested assistance from the KMCC medical staff for any symptom related to smoking cessation. Until he has done so, the court does not believe that he can demonstrate imminent danger that he will suffer serious harm from medical problems related to his alleged nicotine addiction. Therefore, the court will deny his request for immediate injunctive relief.

McCauley believes that 42 U.S.C. § 1997e (which McCauley calls CRIPA) gives inmates 180 days in which to exhaust prison administrative remedies before an adverse policy may be implemented against them. He argues that the defendant is violating his right to due process by implementing the smoking ban before first giving him an opportunity to exhaust his administrative remedies. These assertions have no merit.

Inmates have no constitutional right to a grievance procedure or to complete all appeals in an existing grievance procedure before the regulation being grieved takes effect. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Section 1997e(a), the statute to which McCauley apparently refers, does not now, and never did, give inmates a statutory right to exhaust administrative remedies. A former version of § 1997e allowed prison officials, who were sued as defendants in a prisoner civil rights action, to move for a 180-day stay of the civil action to require the inmate plaintiff to exhaust his administrative remedies before proceeding with the lawsuit. This statute did not, however, give inmates any right to complete the grievance procedure. Moreover, after extensive amendments

3

included in the Prison Litigation Reform Act of 1996, however, § 1997e(a) now requires inmates to exhaust administrative remedies before bringing a civil action in federal court.

Section 1997e(a) provides that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Under the plain language of the statute, exhaustion of administrative remedies is a "prerequisite to suit" in the prisoner's civil rights context. See Nussle v. Porter, 534 U.S. 516, 524 (2002). The United States Supreme Court has held that the Section 1997e(a) exhaustion of administrative remedies requirement applies to "all inmate suits, whether they involve general circumstances or particular episodes, . . . whether they allege excessive force or some other wrong,"and whether or not the form of relief the inmate seeks is available through exhaustion of administrative remedies. Id. To satisfy §1997e(a) before filing his §1983 action, an inmate must follow each step of the established administrative procedure that the state provides to prisoners and meet all deadlines within that procedure. See Woodford v. Ngo, 126 S. Ct. 2378, 2387 (2006); Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002).

McCauley admits on the face of his complaint that he has not yet exhausted the available administrative remedies at KMCC concerning the smoking ban. In fact, as stated, he argues that the court should order the defendant to hold up implementation of the ban until McCauley can complete the grievance procedure steps. As it is clear from the face of the complaint that McCauley did not complete all the steps of the established grievance procedures at KMCC before filing this lawsuit, it is also clear that he did not comply with § 1997e(a). Therefore, the court will summarily dismiss

this action without prejudice, pursuant to that statute. <u>Anderson v. XYZ Correctional Health Services, Inc.</u>, 407 F.3d 674, 682 (4th Cir. 2005) (finding that a court may summarily dismiss a prisoner's civil action if it is clear from the face of the complaint that he did not exhaust available administrative remedies before filing suit). An appropriate order shall be issued this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 20th day of November, 2007.

/s/ James C. Turk
Senior United States District Judge